IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

FILED
APR 2 4 2014
[signature] CLERK

| | |
|---|---|
| LISA GONSALVES, Mother and Personal Representative of the Estate of Wakanda O. Gonsalves, deceased; and LEON GONSALVES, Father of Wakanda Gonsalves,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK J. ADAMS, M.D.; and MEDICAL DOCTOR ASSOCIATES, LLC,<br><br>Defendants. | CIV: 14-1006<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs, by and through their counsel of record, and for their causes of action against Defendants, state and allege:

## PARTIES

1.  Plaintiffs are the father and mother of Wakanda O. Gonsalves ("Wakanda"), and bring this action in their individual capacity and also on behalf of the Estate of Wakanda O. Gonsalves.

2.  Lisa Gonsalves was duly appointed as Personal Representative of the Estate of Wakanda O. Gonsalves by Chief Judge B.J. Jones of the Sisseton-Wahpeton Tribal Court.

3.  Plaintiffs are the surviving parents of Wakanda, who is also survived by three brothers: Angelo Wapi Moreno, Dyami Leon Gonsalves and Kinyanku Reuben Riley Gonsalves, and a sister: Nya Colleen Gonsalves, who would be next of kin.

4.  Plaintiffs are citizens of the State of South Dakota and reside in Roberts County, Lake Traverse Indian Reservation.

5. Defendant Patrick J. Adams, M.D. ("Adams") formerly practiced at the Woodrow Wilson Keeble Memorial Health Care Center in Sisseton, South Dakota, and so practiced at all times material hereto.

6. Upon information and belief, Adams is a citizen and resident of the State of Minnesota.

7. At all times material hereto, Adams was a physician either employed by or contracted with the United States Indian Health Service, practicing at the Woodrow Wilson Keeble Memorial Health Care Center in Sisseton, South Dakota, serving the medical needs of members of the Sisseton-Wahpeton Oyate Tribe.

8. In the alternative, if Adams is not deemed an employee of the United States Indian Health Service, and if not otherwise subject to the Federal Tort Claims Act, Adams was employed and subject to selection, retention, supervision and control by, upon information and belief, Medical Doctor Associates, LLC ("MDA").

9. MDA is an LLC formed in the State of Delaware, with its principal place of business in Florida, or in a state other than South Dakota, that contracted to provide physicians and medical services to the United States Indian Health Service.

## JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over this matter as the parties have diversity of citizenship and the amount in controversy exceeds $75,000, thereby invoking the jurisdiction of 28 U.S.C. §1332.

11. Venue is proper with this Court pursuant to 28 U.S.C. §1391(a).

## **FACTS RELEVANT TO ALL CLAIMS**

12.  Wakanda was born on April 28, 1993, and at the time of her death, she was preparing for her graduation from Tiospa Zina Tribal School. She was planning on attending college following her high school graduation.

13.  Wakanda had been experiencing illness associated with her lungs and breathing.

14.  As a result, on Friday, May 4, 2012, which was the day prior to Wakanda's high school prom, her father brought Wakanda to the Woodrow Wilson Keeble Memorial Health Care Center in Sisseton, South Dakota, for examination and medical care after school that day.

15.  Wakanda was seen by Adams, who took a history from her, briefly examined her, rushed to a diagnosis of her condition, and released her.

16.  Adams took a history from Wakanda that reflected that Wakanda had been having chest pain and coughing. Adams noted that the coughing produced bright red blood ("hemoptysis").

17.  Adams, and his staff at Woodrow Wilson Keeble Memorial Health Care Center in Sisseton, South Dakota, would have information available, including patient history, medical charts and records, at the clinic in order to properly diagnose and treat Wakanda, but they failed to do so.

18.  After being released without further care or hospitalization by Adams on Friday evening, May 4, 2012, Wakanda went home. Her high school prom was scheduled for the next day, and Wakanda, despite still feeling ill, attended her prom. However, she left early because she was feeling poorly. This would have been on

3

Saturday, May 5, 2012. The next day, Sunday, May 6, 2012, Wakanda basically stayed around the house as she was still not feeling well.

19. In the early morning hours of Monday, May 7, 2012, Wakanda woke up her parents. She was vomiting and then appeared to have a seizure. She collapsed and became unconscious.

20. Her father commenced CPR, and an ambulance was called. She was transported to the Milbank Hospital. Her father stayed by the side of his dying daughter. CPR continued until Wakanda passed away at the Milbank Hospital on Monday morning, May 7, 2012, at approximately 8:19 a.m.

21. In order to determine Wakanda's cause of death, the body was exhumed and an autopsy was performed.

22. The autopsy determined that Wakanda died from a large thromboembolis associated with her left lung, which blocked a main artery into the lung. She also had a peripheral thromboemboli.

23. Wakanda's increased suffering over the last three days of her life and her resulting death were legally caused by the negligence of Defendants.

24. Adams had the duty to use reasonable care and skill in providing medical services to Wakanda.

25. Adams breached his professional duty of care owed to Plaintiffs and was negligent in, but not limited to, the assessment of her condition, including reviewing her medical history, failing to properly diagnose the condition, failing to sufficiently examine her, failing to properly consider the medical information before releasing her, failing to refer her or offer additional medical treatment or hospitalization, and releasing her without proper medication, and was otherwise negligent.

4

26. As a legal cause of the negligence of Defendants, Plaintiffs sustained the damages alleged herein.

27. As a legal result of the negligence of Defendants, Plaintiffs have incurred costs and expenses for the medical care, including hospitalization at the Milbank Hospital and ambulance charges, along with funeral and cemetery expenses, together with expenses related to the autopsy, together with general damages, all of which will be in an amount proved at the time of trial, but greatly in excess of $75,000.

28. That as to the special damages referenced in the preceding paragraph, Plaintiffs are entitled to prejudgment interest.

## COUNT I
## WRONGFUL DEATH

29. Plaintiffs reallege paragraphs 1-28 of this Complaint and hereby incorporate them by reference as if fully set forth herein.

30. As the result of Defendants' failure to exercise reasonable care and skill in providing professional medical services to Wakanda, as alleged, Plaintiffs sustained the damages set forth in paragraphs 27 and 28 and damages for wrongful death.

31. Such general damages in this wrongful death action include the economic loss suffered by Plaintiffs and the next of kin in terms of loss of advice, companionship, society, assistance and protection provided by Wakanda, which losses have been suffered since May 7, 2012, and which losses will continue to be suffered in the future.

## COUNT II
## SURVIVAL CLAIM

32. Plaintiffs reallege paragraphs 1-31 and hereby incorporate them by reference as if fully set forth herein.

33.     As a legal result of the negligence of Defendants, Wakanda suffered conscious pain, harm and mental anguish from the time she was discharged at the clinic on May 4, 2012, up to the time that she suffered an apparent seizure and lost consciousness in the early morning hours of Monday, May 7, 2012, together with the damages set forth in paragraph 28.

## COUNT III
## NEGLIGENCE OF DEFENDANT MDA

34.     Plaintiffs reallege paragraphs 1-33 and hereby incorporate them by reference as if fully set forth herein.

35.     If Adams is not deemed an employee of the United States Indian Health Service, and if not otherwise subject to the Federal Tort Claims Act, Adams was the employee/agent of MDA, and at all times material hereto was acting within the scope of actual, express, apparent and/or implied authority of, or acting within the scope of his employment/agency duties with MDA.

36.     MDA would be responsible for the negligence of Adams and the damages legally caused by that negligence under the doctrine of repondeat superior.

37.     In addition, MDA had a duty to provide patients such as Wakanda, and those served by the Woodrow Wilson Keeble Memorial Health Care Center / United States Indian Health Service with a competent, dedicated physician who will properly administer medical care, and MDA had a duty to exercise reasonable care to control/address the quality of services provided by Adams.

38.     MDA had the duty to select, retain, supervise and control the professional services of Adams, and its failure to do so represents separate negligence and breach of duty to Plaintiffs, resulting in the damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For compensatory, general and special damages in an amount to be determined by the jury to compensate Plaintiffs for all damages sustained as a result of the negligent conduct of Defendants, which amount far exceeds $75,000;

2. For Plaintiffs' costs and disbursements herein;

3. For prejudgment interest and postjudgment interest; and

4. For such other and further relief as the Court deems just and proper.

Dated this 24th day of April, 2014.

MURPHY, GOLDAMMER
& PRENDERGAST, LLP

_____
Michael L. Luce (mike@mgplawfirm.com)
101 North Phillips Avenue
Wells Fargo Building, Suite 402
Post Office Box 1535
Sioux Falls, SD 57101-1535
Telephone: (605) 331-2975
Facsimile:  (605) 331-6473
*Attorney for Plaintiffs*

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on the causes of action presented by their Complaint.

Dated this 24th day of April, 2014

MURPHY, GOLDAMMER
& PRENDERGAST, LLP

_____
Michael L. Luce